**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **DANIEL BOSH,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | )    **Case No. 11-CV-376-JHP** |
| | ) |
| **CHEROKEE COUNTY BUILDING** | ) |
| **AUTHORITY, et al.,** | ) |
| | ) |
|       **Defendants.** | ) |
| | ) |

**OPINION AND ORDER**

Before the Court are Defendant Cherokee County Governmental Building Authority's Motion to Dismiss (Motion to Dismiss),[1] Plaintiff's Response to Defendant Cherokee County Governmental Building Authority's Motion to Dismiss (Plaintiff's Response),[2] Defendant's Reply to Plaintiff's Response to Defendant Cherokee County Governmental Building Authority's Motion to Dismiss (Defendant's Reply),[3] Defendant Cherokee County Governmental Building Authority's Supplemental Brief,[4] and Plaintiff's Response to Defendant Cherokee County Governmental Building Authority's Supplemental Brief.[5] For the reasons detailed below, Defendant Cherokee County Governmental Building Authority's Motion to Dismiss is **DENIED IN PART**, **GRANTED**

---

[1] Docket No. 12.

[2] Docket No. 15.

[3] Docket No. 16.

[4] Docket No. 23.

[5] Docket No. 27.

**IN PART**.[6]

## BACKGROUND

### A. Factual Background

The instant case arises from a May 17, 2011 arrest of Plaintiff for failure to pay a traffic ticket.[7] After Plaintiff's arrest, he was transported by an unnamed Oklahoma State Highway Patrol officer to the Cherokee County Detention Center (CCDC).[8] Upon arrival at the CCDC, Plaintiff was presented to Defendant Gordon Chronister for booking.[9] At the booking desk, Plaintiff asked Defendant Chronister to loosen his handcuffs, after which Defendant Chronister and Plaintiff exchanged words.[10] Defendants allege that Plaintiff was combative and that Plaintiff was preparing to spit on Defendant Chronister.[11]

During the verbal exchange, Defendant Chronister left his position behind the booking desk to approach the still handcuffed Plaintiff.[12] Plaintiff remained at the booking desk as Defendant Chronister approached him.[13] Upon reaching Plaintiff, Defendant Chronister quickly slammed Plaintiff's face into the booking desk and then executed what can only be described as a wrestling

---

[6]Docket No. 12.

[7]Petition at 2, Docket No. 2-2.

[8]*Id.*

[9]*Id.*

[10]*Id.*

[11]*Id.* at 3.

[12]*Id.* at 2.

[13]*Id.*

maneuver, taking Plaintiff head first to the floor.[14] Additional officers then arrived on the scene, all attempting to further restrain the still handcuffed Plaintiff through the application of a neck restraint hold and knee and elbow strikes.[15] The full extent of this altercation was captured on video surveillance.

Plaintiff alleges that he was then taken to another room where the beating by multiple officers continued.[16] After this assault concluded, Plaintiff was allegedly taken to another room where he was then punched repeatedly by Defendant T.J. Girdner.[17] After the assault by Defendant Girdner, Plaintiff alleges that other officers pulled his legs out from under him causing Plaintiff to fall backwards to the floor.[18]

Plaintiff wife alleges she contacted CCDC several times to check on Plaintiff's status.[19] She further alleges that she was told Plaintiff had been beaten and likely needed medical attention, but that medical attention was being denied as a means of retaliation.[20] On May 19, 2011, Plaintiff was transported to Talequah City Hospital, where medical providers determined he needed a greater level of care than they could provide.[21] Plaintiff was then transported to Tulsa, where an orthopedic

---

[14]*See id.*

[15]*See id.*

[16]*Id.* at 3.

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Id.*

surgeon discovered a severe burst fracture in Plaintiff's spinal column.[22]

**B. Procedural Background**

On September 29, 2011, Plaintiff brought the instant suit in Cherokee County District Court against the Cherokee County Building Authority (Authority), Gordon Chronister, and T.J. Girdner, alleging multiple torts and Constitutional violations.[23] On October 24, 2011, Defendant Authority removed the case to this Court pursuant to 28 U.S.C. §1331, based on Plaintiff's apparent claims under 42 U.S.C. §1983.[24] Plaintiff did not file a Motion for Remand. This Court exercises jurisdiction over Plaintiff's concurrent state law claims pursuant to its supplemental jurisdiction under 28 U.S.C. §1367.

On October 31, 2011, Defendant Authority filed the instant Motion to Dismiss.[25] The Motion was fully briefed with the filing of Defendant's Reply on November 8, 2011.[26] At the December 6, 2011 status and scheduling conference before this Court, Plaintiff raised issues relating to further claims against Defendant Authority and sought leave to amend. The Court ordered supplemental briefing on this issue. Supplemental briefs on the new issues were filed on December 14, 2011 by Defendant Authority and on December 25, 2011 by Plaintiff.[27] All issues raised are now fully briefed and before this Court.

---

[22] *Id.*

[23] *See generally, id.*

[24] *See* Notice of Removal at 2, Docket No. 2.

[25] *See* Docket No.12.

[26] *See* Docket No. 16.

[27] *See* Docket No.'s 23, 27.

**DISCUSSION**

To survive Defendant's motion to dismiss, Plaintiff's Petition must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[28] "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[29] The *Twombly* standard does not require heightened fact pleading, it merely requires the complaint to contain enough facts to state a claim for relief that is plausible on its face.[30] Finally, this Court emphasizes that even after *Twombly*, granting a defendant's motion to dismiss is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."[31] Looking to Plaintiff's vivid recitation of the facts, assuming their veracity, and proceeding cautiously in the interests of justice, the Court now assesses the plausibility of Plaintiff's claims for relief.

**A. §1983 Claim against the Authority**

Defendant first seeks to dismiss any claim by Plaintiff pursuant to 42 U.S.C. §1983.[32] This part of the Motion is in response to loose language in Plaintiff's Petition, including references to all Defendants as "persons within the meaning of 42 U.S.C. §1983," and generalized allegations

---

[28]*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[29]*Iqbal*, 129 S. Ct. at 1950.

[30]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 563 127 S.Ct. 1955, 1965-66, 167 L.Ed.2d 929 (2007).

[31]*Morgan v. City of Rawlins*, 792 F.2d 975, 978 (1994).

[32]Motion to Dismiss at 2, Docket No. 12.

regarding violations of the Fourth and Fourteenth Amendments to the United States Constitution.[33] Plaintiff specifically denies he included any federal claim against Defendant Authority in his original Petition. Plaintiff contends his sole claim against the authority arises under the Oklahoma Governmental Tort Claims Act and is found at paragraph 15 of the Petition.[34] Plaintiff further characterizes Defendant's arguments on this point as "frivolous" and requests cost associated with responding.[35]

The Court accepts Plaintiff's contention that no §1983 claim was intended as against Defendant Authority. However, Defendant's motion on this issue was largely in response to Plaintiff's inarticulate and ambiguous pleading with regard to causes of action. Consequently, no assessment of costs is warranted for the seven responsive lines Plaintiff was forced to prepare in order to defend this otherwise moot portion of Defendant's larger Motion to Dismiss. Defendant Authority's Motion to Dismiss Plaintiff's §1983 claim against the Authority is necessarily **DENIED AS MOOT**.

**B. Oklahoma Governmental Tort Claims Act Claim Against the Authority**

Defendant seeks to dismiss Plaintiff's claim that the Authority is liable for the negligent actions of its employee officers, ostensibly for the officers' failure both to check plaintiff's welfare and to provide medical care.[36] Plaintiff's negligence claim is brought pursuant to the Oklahoma Governmental Tort Claims Act (the Act), in which the State of Oklahoma has statutorily waived

---

[33]*Id.* at 2 (*citing* Petition at 2, 4, Docket No. 2-2).

[34]Plaintiff's Response at 1, Docket No. 15.

[35]*Id.*

[36]*See* Petition at 3, Docket No. 2-2.

sovereign immunity from suit, for itself and its subdivisions, in limited instances.[37] Specifically, the Act provides that:

> The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of this act for any act or omission of an employee acting outside the scope of his employment.[38]

Defendant is a "political subdivision" within the meaning of the Act, and is therefore liable under the Act.[39] However, §155(24) of the Act provides an exemption to the Act's waiver: "[t]he state or a political subdivision shall not be liable if a loss or claim results from [the]: . . .[p]rovision, equipping, operation or maintenance of a prison, jail or correctional facility." This exemption has consistently been broadly interpreted by the Oklahoma Supreme Court.[40]

As Plaintiff's tort claim arises from negligence in the operation of the jail, Defendant alleges it is therefore specifically exempted from the State's waiver of sovereign immunity under the Act. As such, Defendant contends it retains its sovereign immunity from suit with regard to Plaintiff's

---

[37]*See* Oklahoma Governmental Tort Claims Act, OKLA. STAT. TIT. 51 §§ 151 et seq.

[38]*Id.* at §153(A).

[39]See Motion to Dismiss at 7, Docket No. 12.

[40]*See Redding v. State*, 1994 OK 102, ¶¶7-8, 882 P.2d 61, 63; ("We recently upheld the Department's view that the legislative intent of §155(23) [now codified at §155(24)] is to protect the state from liability for loss resulting from any and all actions of officers and employees of a penal institution."); *Purvey v. State*, 1995 OK 103 ¶¶ 5 & 8, 905 P.2d 770, 770-71 (dismissing contention that §155(24) has been interpreted too broadly; holding exemption applies to negligence by prison official in issuing chainsaws to prisoners without proper training).

claims.[41] Plaintiff contends Defendant's reading of §155(24) as overbroad.[42] Plaintiff asks this Court to consider several Oklahoma statutes passed since the Oklahoma Supreme Court's last interpretation of §155(24) and either find the exemption does not apply, or, in the alternative, certify the question to the Oklahoma Supreme Court under the Revised Uniform Certification of Questions Act.[43]

Contrary to Plaintiff's allegation, the cited statutes are not rendered absurd by the continued broad interpretation of the §155(24). Oklahoma State Title 12, §95(10)(c), cited by Plaintiff as establishing a statute of limitations for actions against political subdivisions, does nothing of the sort. Rather, §95(10)(c) (now codified at Oklahoma State title 12, §95(11)(c)) applies a statute of limitations to all causes of action against any party arising from facts that occurred while the plaintiff was an inmate. However, this statute of limitations does not apply to tort claims against political subdivisions under the Act, and therefore creates no conflict with exemption under §155(24).[44]

Plaintiff's assertion of conflict between the §155(24) exemption and Oklahoma State title 57, §564 is similarly incorrect. The exhaustion provision contained in §564 applies to all actions brought against any governmental entity, and does not directly implicate tort claims under the Act. Regardless, if conflict exists, the terms of the Act, and therefore the exemption, control.[45]

---

[41]Motion to Dismiss at 10, Docket No. 12.

[42]Response at 2, Docket No. 15,

[43]*Id.* at 5-7, 8.

[44]*See Brown v. Creek County ex rel. Creek County Bd. of County Com'rs,* 2007 OK 56, ¶ 4, 164 P.3d 1073, 1076.

[45]*Id.* at ¶4, 1076.

Finally, Plaintiff's assertion that a conflict exists between the exemption and Oklahoma State title 57, §566.4(B)(2) is also incorrect. Section 566.4(B)(2) merely states no claim can be brought against the state or its agencies until the notice provisions of the Act are fully complied with by the claimant. Notice requirements allow government entities to properly invoke the exemption. The fact a statute requires a claimant provide notice of a tort claim implies nothing regarding whether or not a claimant can maintain that claim. Ultimately, Plaintiff's contention that recent Oklahoma statutes call into question the intended breadth of the exemption is unfounded.

Despite Plaintiff's protestations, the Oklahoma Supreme Court's pronouncement on this issue is quite clear: "the legislative intent of [§155(24)] is to protect the state from liability for loss resulting from any and all actions of officers and employees of a penal institution" relating to the provision, equipping, operation, or maintenance of any prison, jail, or correctional facility.[46] Because the provision medical care is directly related to the operation of that facility, torts resulting from the failure of employees to provide such care is covered by the exemption.[47] As such, Defendant is generally exempted from suit in tort on the issue of failure to provide medical care, and Plaintiff's claim under the Oklahoma Governmental Tort Claims Act is untenable.[48] Plaintiff's allegations pursuant to the Oklahoma Governmental Tort Claims Act fail to state a claim upon which relief can

---

[46]*See Redding*, 1994 OK 102 at ¶7, 882 P.2d at 63.

[47]*See Medina v. State,* 1993 OK 121, ¶7, 871 P.2d 1379, 1382 ( [§ 155(24)] protects the state from liability for loss resulting from the operation of a penal institution, i.e. "the process or manner of conducting the functions of a penal institution").

[48]The immunity provided by §155(24) does not preclude an action for denial of medical care against Defendant as part of a §1983 claim. *See, e.g., Edelen v. Board of Com'rs of Bryan County*, 2011 OK CIV APP 116, ¶12, 266 P.3d 660, 667 (*cert. denied* October 24, 2011) (holding allegations of delaying and denial of medical care by County Commissioners provides affirmative link to violation of constitutional right required by §1983, therefore not subject to dismissal).

be granted, therefore Defendant Authority's Motion to Dismiss with regard to Plaintiff's tort claims is **GRANTED**. Based on the broad exemption of §155(24), any attempt to amend the Petition with regard to these tort claims would be futile, therefore these claims are **DISMISSED WITH PREJUDICE**.

## C. Leave to Amend

Plaintiff requests that, in the event his tort claims against Defendant is dismissed, that it be granted leave to amend its complaint to include a claim against the Defendant under 42 U.S.C. §1983 based on new information gleaned from the pleadings.[49] Plaintiff also seeks to include a claim for excessive force in violation of the Oklahoma Constitution, and has offered Oklahoma case law handed down since the filing of the initial Petition supporting his position that such a claim exists under Oklahoma law.[50]

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint "shall be freely given when justice so requires." "[D]istrict courts may withhold leave to amend only for reasons such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment."[51]

Based on the facts of this case, in conjunction with Plaintiff's submission of evolving Oklahoma case law regarding whether or not claims of excessive force are cognizable as separate

---

[49] Plaintiff's Response at 9, Document 15.

[50] Plaintiff's Response to Defendant's Supplemental Brief at 2, Docket No. 27.

[51] *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir.2010)(*internal quotations omitted*).

10

actions under the Oklahoma Constitution, the Court finds that the request for leave to amend is not the result of undue delay, dilatory motive, or bad faith.[52] Further, Plaintiff has submitted no other requests to amend the Petition, and the Court finds that at this early stage of the proceedings any prejudice to Defendant created by allowing amendment can be easily cured. Finally, based on the well-pled facts in this case and the unclear Oklahoma precedent on the issue of excessive force, the Court cannot, at this juncture, conclude that amendment would be futile.

Consequently, Plaintiff is hereby granted leave to file an Amended Complaint to the extent Plaintiff can add well-pleaded claims against (1) Defendant Cherokee County Governmental Building Authority under 42 U.S.C. §1983 and (2) against all Defendants for excessive force under Oklahoma Constitution Article 2, §30, in addition to his existing claims against the individual Defendants.[53] This Amended Complaint should comport with both the Federal Rules of Civil Procedure and Local Rules with regard to pleading form and standards.

---

[52] *See Bryson v. Oklahoma County ex rel. Oklahoma County Detention Center*, 2011 OK CIV APP 98, ¶32, 261 P.3d 627, 640 (holding the Act is no defense to a claim for violation of Okla. Const. art. 2, § 30, brought by an arrestee or pretrial detainee.);*Washington v. Barry*, 2002 OK 45, ¶9 55 P.3d 1036, 1038 (holding prisoners have potential cause of action for claims of excessive force if they can demonstrate force rose to cruel and unusual punishment *under both state and federal constitutions*, a significantly greater burden than for those not incarcerated) (*emphasis added*).

[53] *Cf. Bryson,* 2011 OK CIV APP 98, ¶14, 261. P.3d at 638 (holding §30, not §9, of Article 2 is the provision applicable to arrestees and pretrial detainees); *Cf. Washington v. Barry*, 2002 OK 45, ¶9 55 P.3d 1036, 1038 (*citing Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ("plaintiffs who are not prisoners have significantly broader rights arising from the application of force by police officers making arrests than do those who are incarcerated"); *Morales v. City of Oklahoma City*, 2010 OK 9, ¶ 12, 230 P.3d 869, 876 ("If a tort is committed in the process of making an arrest, § 155(4) does not provide immunity from suit to the officer's governmental employer for the resulting damages").

## CONCLUSION

With regard to the unpled §1983 claim, Defendant Authority's Motion to Dismiss is **DENIED AS MOOT**. Defendant Authority's Motion to Dismiss is **GRANTED**, insofar as it seeks to dismiss Plaintiff's tort claims. Plaintiff's tort claims against Defendant Cherokee County Governmental Building Authority are hereby **DISMISSED WITH PREJUDICE**. However, the Court **GRANTS** Plaintiff leave to file an amended Complaint consistent with this Opinion and Order within 15 days of entry of said Order.

Dated this 5th day of April, 2012.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma