IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL BOSH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-376-JHP |
| | ) |
| CHEROKEE COUNTY BUILDING | ) |
| AUTHORITY, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court are Defendant Cherokee County Governmental Building Authority's Motion to Dismiss Plaintiff's First Amended Complaint (Second Motion to Dismiss),[1] Plaintiff's Response to Defendant Cherokee County Governmental Building Authority's Second Motion to Dismiss (Plaintiff's Second Response),[2] Defendant's Reply to Plaintiff's Response to Defendant Cherokee County Governmental Building Authority's Motion to Dismiss (Defendant's Second Reply),[3] For the reasons detailed below, Defendant Cherokee County Governmental Building Authority's Motion to Dismiss is **DENIED IN PART**.[4]

## BACKGROUND

---

[1]Docket No. 45.

[2]Docket No. 56.

[3]Docket No. 63.

[4]Docket No. 45.

1

**A. Factual Background**[5]

The instant case arises from a May 17, 2011 arrest of Plaintiff for failure to pay a traffic ticket.[6] After Plaintiff's arrest, he was transported by an unnamed Oklahoma State Highway Patrol officer to the Cherokee County Detention Center (CCDC).[7] Upon arrival at the CCDC, Plaintiff was presented to Defendant Gordon Chronister for booking.[8] At the booking desk, Plaintiff asked Defendant Chronister to loosen his handcuffs, after which Defendant Chronister and Plaintiff exchanged words.[9] Defendants allege that Plaintiff was combative and that Plaintiff was preparing to spit on Defendant Chronister.[10]

During the verbal exchange, Defendant Chronister left his position behind the booking desk to approach the still handcuffed Plaintiff.[11] Plaintiff remained at the booking desk as Defendant Chronister approached him.[12] Upon reaching Plaintiff, Defendant Chronister quickly slammed Plaintiff's face into the booking desk and then executed what can only be described as a wrestling maneuver, taking Plaintiff head first to the floor.[13] Additional officers then arrived on the scene, all

---

[5] The Court recites the facts as set out in its April 5, 2012 Opinion and Order on Defendant Authority's first Motion to Dismiss. *See* Docket No. 41.

[6] Petition at 2, Docket No. 2-2.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 3.

[11] *Id.* at 2.

[12] *Id.*

[13] *See id.*

2

attempting to further restrain the still handcuffed Plaintiff through the application of a neck restraint hold and knee and elbow strikes.[14] The full extent of this altercation was captured on video surveillance.

Plaintiff alleges that he was then taken to another room where the beating by multiple officers continued.[15] After this assault concluded, Plaintiff was allegedly taken to another room where he was then punched repeatedly by Defendant T.J. Girdner.[16] After the assault by Defendant Girdner, Plaintiff alleges that other officers pulled his legs out from under him causing Plaintiff to fall backwards to the floor.[17]

Plaintiff's wife alleges she contacted CCDC several times to check on Plaintiff's status.[18] She further alleges that she was told Plaintiff had been beaten and likely needed medical attention, but that medical attention was being denied as a means of retaliation.[19] On May 19, 2011, Plaintiff was transported to Tahlequah City Hospital, where medical providers determined he needed a greater level of care than they could provide.[20] Plaintiff was then transported to Tulsa, where an orthopedic surgeon discovered a severe burst fracture in Plaintiff's spinal column.[21]

---

[14]*See id.*

[15]*Id.* at 3.

[16]*Id.*

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Id.*

3

**B. Procedural Background**

On September 29, 2011, Plaintiff brought the instant suit in Cherokee County District Court against the Cherokee County Building Authority (Authority), Gordon Chronister, and T.J. Girdner, alleging multiple torts and Constitutional violations.[22] This Court previously dismissed all Plaintiff's claims against Defendant Authority, but granted Plaintiff leave to file an amended complaint in order to raise well-pleaded claims against Defendant Cherokee County Governmental Building Authority under 42 U.S.C. §1983 and to formally allege a claim against all Defendants for excessive force under Oklahoma Constitution Article 2, §30 so the Court could better address the viability of such a claim under Oklahoma law.[23] Plaintiff filed his First Amended Complaint in April 20, 2012 with claims against Defendant Authority under §1983 and under Oklahoma Constitution Article 2, §30.[24] Defendant filed both an Answer to Plaintiff's Amended Complaint and a second Motion to Dismiss.[25] This Motion is fully briefed and before this Court.

## **DISCUSSION**

To survive Defendant's motion to dismiss, Plaintiff's Amended Complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[26] "When there are well-pleaded factual allegations, a court should assume their veracity and then

---

[22] *See generally, id.*

[23] *See* Opinion and Order at. ("Finally, based on the well-pled facts in this case and the unclear Oklahoma precedent on the issue of excessive force, the Court cannot, at this juncture, conclude that amendment would be futile).

[24] Docket No. 42.

[25] Docket No.'s 43, 45.

[26] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

4

determine whether they plausibly give rise to an entitlement to relief."[27] The *Twombly* standard does not require heightened fact pleading, it merely requires the complaint to contain enough facts to state a claim for relief that is plausible on its face.[28] "[A] well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely."[29]

This Court emphasizes that even after *Twombly*, granting a defendant's motion to dismiss is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."[30] The Court again looks to the vivid recitation of the facts alleged in Plaintiff's original Petition and to the new facts plead in Plaintiff's Amended Complaint, and assumes their veracity. Proceeding cautiously and in the interests of justice, the Court assesses the plausibility of Plaintiff's amended claims for relief against the Authority in light of those facts.

**A. §1983 Claim against the Authority**

Defendant first seeks to dismiss any claim by Plaintiff pursuant to 42 U.S.C. §1983.[31] Under

---

[27]*Iqbal*, 129 S. Ct. at 1950.

[28]*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 563 127 S.Ct. 1955, 1965-66, 167 L.Ed.2d 929 (2007).

[29]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10thCir. 2008) (*internal citations/quotations removed*).

[30]*Morgan v. City of Rawlins*, 792 F.2d 975, 978 (1994).

[31]Motion to Dismiss at 2, Docket No. 12.

5

§ 1983, a municipality may not be held liable on a theory of *respondeat superior*.[32] Instead, to survive a motion to dismiss, a plaintiff must fairly allege "that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action."[33] The requisite official policy or custom may be a formal regulation or policy statement, or it may be based on an informal "custom" that rises to the level of "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'"[34]

Plaintiff may also establish a viable claim by alleging facts that plausibly suggest Defendant Authority acted with deliberate indifference in failing to adequately train or supervise the officers responsible for the Constitutional deprivation.[35] Defendant specifically claims that Plaintiff's Amended Complaint fails to allege that either an official with policymaking authority participated in the assault on Plaintiff and (2) that Plaintiff fails to establish that either the Authority or the Detention Center had a well-established practice of using force in violation of the Fourth

---

[32]*Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir.2000) (*citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

[33]*Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1229 (10th Cir.2001) (*internal quotation marks omitted*).

[34]*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970));

[35]*See Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1189 (10thCir.2010) (*citing City of Canton v. Harris*, 489 U.S. 378, 388-91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Amendment.[36]

The Court concurs that Plaintiff has failed to allege that any official with policymaking authority participated in the attack on Plaintiff. However, contrary to Defendant Authority's assertions, Plaintiff need not "establish" that the center had a well-established policy that was ultimately the moving force behind the alleged deprivation of Plaintiff's rights to survive the instant Motion to Dismiss.[37] Rather, Plaintiff need only fairly allege that such a policy exists or existed and support this allegation with facts that suggest relief is "plausible."[38] Plaintiff does so.

In addition to reciting the brutal, unconstitutional conduct allegedly perpetrated by officers, Plaintiff specifically alleges that:

> The actions of Defendants Chronister and Girdner were taken within the scope of their employment and in furtherance of a well-established policy or practice of the CCGBA that condoned force that violates the Fourth Amendment to the United States Constitution for which the CCGBA is liable pursuant to 42 U.S.C. § 1983.

To support this allegation Plaintiff's Amended Complaint goes on to recite facts provided by third-parties that, taken as true, suggest other, frequent assaults at the facility:

> As a trustee, Doe was frequently called upon to clean blood off the booking desk, the floor in front of the booking desk and the shower where jailers initially took Bosh.
> ***
> While a trustee, Doe personally observed other instances where jailers would slam a restrained arrestee onto the ground without provocation.[39]

and:

> The two jailers pulled Doe #2 off the top bunk. One jailer held him down while the

---

[36]*See* Motion to Dismiss at 5, 7, Docket No. 45.

[37]*See id.* at 7.

[38]*Cf. Twombly*, 550 U.S. at 556, 563 127 S.Ct. at 1965-66.

[39]Amended Complaint at 4-5, Docket No. 42.

7

other jailer punched and kicked him.

\*\*\*

Doe #2 called [jail administrator Lloyd] Bickel after his release a couple days later to complain about the beating. Bickel did not answer, and Doe #2 continued to call Bickel several times a week over the next three months, repeatedly leaving voice mails about the assault.

\*\*\*

Doe #2 eventually reached Bickel by telephone and personally told him about the attack. Bickel told Doe #2 that he would "pull" the video and look into it. Doe #2 identified one of his attackers to Bickel as Defendant Chronister.

\*\*\*

Doe #2 never heard back from Bickel, and Chronister's employment file does not contain any document or notation of an allegation by Doe #2 or an investigation.[40]

Plaintiff also alleges that the above-cited deprivations, as well as the vicious assault on Plaintiff, were the result of either a custom of the Authority or a deliberately indifferent failure to supervise by a policymaking official:

> The CCGBA has delegated the day-to-day operational aspects of the jail to Bickel, to include the organization, direction, development and administration of all functions for the CCDC; the development, clarification and implementation of all policies and procedures; and the administration of all human resource processes for the CCDC employees' development.
>
> \*\*\*
>
> The violent incidents described by Doe and experienced by Doe #2 are "serious incidents" that Bickel would report to the CCGBA pursuant to policy, and yet despite the longstanding pattern of these violent assaults, the CCGBA did nothing in response.[41]

These are not mere conclusory allegations, but contain factual averments, that taken as true, vault Plaintiff's Amended Complaint over the "plausibility" bar set by *Twombly* and *Iqbal*. Consequently, Defendant Authority's Motion to Dismiss Plaintiff's §1983 claim is **DENIED**.

**B. Plaintiff's Claim Under the Oklahoma Constitution**

---

[40]*Id.* at 5.

[41]*Id.* at 6.

Plaintiff previously sought to include a cause of action for excessive force under Article 2, §30 of the Oklahoma Constitution. Section 30 does not explicitly create a cause of action arising under the Oklahoma Constitution, and there is no statutory enactment authorizing such a claim. However, Plaintiff continues to argue that the cause of action was recognized by the Oklahoma Court of Civil Appeals in *Bryson v. Oklahoma County* ex rel. *Oklahoma County Detention Center*.[42] The Court entertained argument on the issue prior to its ruling on Defendant's initial Motion to Dismiss, and ultimately found that Plaintiff could include such a claim in an amended complaint because, from the argument presented, the Court could not fairly conclude that such an amendment would be futile.[43]

When this Court must resolve an issue of Oklahoma law, its task is to predict how the Oklahoma Supreme Court would rule on the issue.[44] In the absence of binding precedent and when there is no reason to doubt that it reflects state law, this Court may rely on a decision of the Oklahoma Court of Civil Appeals (COCA).[45] However, in this case, the Court questions whether the analysis in *Bryson* accurately reflects Oklahoma law on the issue of excessive force under the

---

[42]*See Bryson*, 2011 OK CIV APP 98, ¶32, 261 P.3d 627, 640 (holding the Act is no defense to a claim for violation of Okla. Const. art. 2, § 30, brought by an arrestee or pretrial detainee). *See also Washington v. Barry*, 2002 OK 45, ¶9 55 P.3d 1036, 1038 (holding prisoners have potential cause of action for claims of excessive force if they can demonstrate force rose to cruel and unusual punishment *under both state and federal constitutions*, a significantly greater burden than for those not incarcerated) (*emphasis added*);

[43]*See* Opinion and Order at. ("Finally, based on the well-pled facts in this case and the unclear Oklahoma precedent on the issue of excessive force, the Court cannot, at this juncture, conclude that amendment would be futile).

[44]*Cf. Ensey v. Ozzie's Pipeline Padder, Inc.,* 446 Fed.Appx. 977, 979 (10thCir. 2011) (*citing Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir.2008)).

[45]*Id.*

Oklahoma Constitution. Consequently, it is appropriate to certify questions of law regarding this issue to the Oklahoma Supreme Court. An appropriate Order certifying questions on this issue will follow. The Court defers ruling on Defendant's motion to dismiss Plaintiff's claims for excessive force under the Oklahoma Constitution pending the answer of certified questions from the Oklahoma Supreme Court.

## CONCLUSION

Defendant Cherokee County Governmental Building Authority's Motion to Dismiss Plaintiff's First Amended Complaint is **DENIED IN PART** consistent with this Order and Opinion.[46] All existing deadlines in this case are **STRICKEN** pending resolution of the certified questions of law. As at least one of Plaintiff's claims against Defendant Authority has survived the Defendant's Motion to Dismiss, discovery in this matter should proceed forthwith.

DATED this 30th day of August, 2012.

_James H. Payne_
United States District Judge
Eastern District of Oklahoma

---

[46]Docket No. 45.