IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)   DANIEL BOSH,<br><br>         Plaintiff,<br><br>v.<br><br>(2)   CHEROKEE COUNTY<br>         GOVERNMENTAL BUILDING<br>         AUTHORITY, *et al*,<br><br>         Defendants. | Case No.: 11-CIV-376-JHP |

**PLAINTIFF'S MOTION TO COMPEL RESPONSES FROM DEFENDANTS
CHRONISTER AND GIRDNER**

Pursuant to Fed.R.Civ.P 37, Daniel Bosh, (hereinafter "Bosh" or Plaintiff), submits the following Motion to Compel responses to Interrogatories by Defendants Gordon Chronister ("Chronister") and T.J. Girdner ("Girdner"), and production of documents from Defendant Chronister.[1]  Plaintiff would state as follows:

**I.   STATEMENT OF UNDISPUTED MATERIAL FACT**

Plaintiff submits the following statement of material fact relevant to the present dispute.

1.   Plaintiff filed the present case against Cherokee County Governmental

---

[1] Pursuant to LCvR 37.1, the undersigned can state that has conferred in good faith with opposing counsel by telephone regarding the substance of the motion to compel and the parties have been unable to reach an accord.

Building Authority ("CCGBA"), Chronister, and Girdner on September 29, 2011. [*See* Dkt. # 2, Ex. 2].

2.  Plaintiff served Chronister with an initial set of discovery on October 12, 2011. Chronister responded to Document Request No. 2 as follows:

> 2.  All diaries, **_notes_**, written reports, statements, tape recordings, investigation reports, etc., prepared by or on behalf of the Defendants which contain entries regarding the incident alleged in the Petition, or the injuries claimed in this lawsuit.
>
> **RESPONSE:**   Except for the incident reports previously referenced, the Defendant has no documents responsive to this request in his possession. Defense counsel has possession of the videos that appear to be the same videos that are identified in the Plaintiff's Rule 26 Disclosure.

[*See* Ex. 1, p. 2].

3.  Defendant Chronister posted a note to his Facebook page on May 31, 2011. [*See* Ex. 2]. The report reads "talk about a stressed out day come on six o'clock." [*Id.*]. At 3:03 p.m. that same day, Girdner responded "you wanna go golfing." [*Id.*]. May 31, 2011 is the same date that an agent from the OSBI interviewed employees at the Cherokee County Detention Center ("CCDC") regarding the Bosh incident. [*See* Ex. 3].

4.  Defendant Chronister has refused to produce any notes, messages or any other data from his facebook account, and it is reasonable to infer that Chronister was "stressed out" on May 31, 2011 because of the interview related to the assault on Bosh. Accordingly, there is evidence demonstrating that Chronister has used his facebook account in relation to the Bosh incident.

5. On August 24, 2012, Plaintiff served an Interrogatory on Chronister and Girdner regarding their involvement in use of force episodes at the CCDC. The Defendants provided the following in response:

> **INTERROGATORY NO. 15:** For each use of force incident involving yourself at the Cherokee County Detention Center, please provide the following:
> A. The date and time of the incident;
> B. The name(s) of any involved arrestee, inmate or detainee (however designated);
> C. The name(s) of any involved CCDC employees or employees of the Cherokee County Governmental Building Authority;
> D. The name(s) of any involved law enforcement personnel;
> E. A detailed description of the circumstances;
> F. Whether you prepared any written report;
> G. The identification of each policy and/or procedure, by name and number, that governed your conduct during the use of force;
> H. Whether you are aware of any investigation into the use of force and, if so, a detailed description of what you know about that investigation, its scope and conclusion;
> I. The name(s) of each person investigating a use of force incident responsive to this request;
> J. Whether any inmate, arrestee or detainee received medical treatment following the use of force incident, and a description of such treatment;
> K. Whether you or any employee or law enforcement personnel received any medical treatment, and a description of such treatment and the basis for it.
>
> **ANSWER NO. 15:** The Defendants object to Interrogatory No. 15 as being overly broad and unduly burdensome. lnterrogatory No. 15 is so vaguely worded that it is impossible for the Defendants to determine the scope of What is being requested. The phrase "use of force incident" could involve any application of physical Contact to any inmate, which occurs on an almost daily basis in the course of interactions With persons detained at the Cherokee County Criminal Justice Center. Additionally, reports and records regarding every use of force incident Would require the Defendants and other staff at the Cherokee County Criminal Justice Center to review numerous individual inmate tiles. This would require the Defendants and other staff to spend numerous hours researching records on "use of force incidents" that have no relation to the accusations made by the Plaintiff in this case. This request is an impermissible fishing expedition under the Federal Rules. Federal Courts have

3

long recognized that the Federal Rules for Discovery "are not intended as a broad licensure to mount serial fishing expeditions." Aponte-Torres v. University of Puerto Rico, 445 F.3d 50, 59 (lst Cir. 2006). Where the requested discovery "goes beyond a mere ñshing expedition, [and instead is] designed to 'drain the pond and collect the fish from the such discovery should not be permitted. State ex rel Upjohn Company v. Dalton, 829 SW.2d 83, 85 (M0. App. E.D. 1992) [quoting In re IBM Peripheral EDP Devises Antitrust Litigation, 77 FRD 39, 42 (ND. Cal. 1977)].

[*See* Ex. 4].

6. On July 2, 2013, Girdner provided the following response to a document request for a medical authorization limited to one day's records from Tahlequah City Hospital and W.W. Hastings:

> **REQUEST NO. 23:** Please provide an executed copy of the Release submitted herewith for the production of Defendant's medical records from Tahlequah City Hospital and W.W. Hastings for the date June 16, 2010.
>
> **RESPONSE MO. 23:** The Defendant objects to Request for Production of Documents No. 23 in that it seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of relevant and admissible evidence. The medical records of Defendant T.J. Girdner from Tahlequah City Hospital and W.W. Hastings for the date June 16, 2010 have no discernible relevance to the issues raised in this litigation.

[*See* Ex. 5].

7. Girdner's employment file from the CCGBA includes an incident report and a note from Tahlequah City Hospital dated June 16, 2010. [*See* Ex. 6]. Girdner drafted the incident report which claims that "[d]uring incident w/inmate [caught] inbetween[sic] Inmate + concrete floor." [*Id*.]. This report acknowledges that Girdner sustained an injury. [*Id*.].

8. The date-- June 16, 2010-- coincides with hospital records of former CCDC inmate. CCDC jailers transported the inmate to Tahlequah City Hospital for lacerations to his forehead and multiple abrasions to his face. [*See* Ex. 7]. The injuries to the inmate required multiple staples. [*Id*. at p. 3]. Medical personnel who prepared the chart for the inmate noted that he sustained a direct blow to the head while in custody at the CCDC, and that the inmate was in an altercation with an officer. [*Id*. at 1, 2].

9. Medical records and diagnostic images of Girdner's hand will likely reveal whether his workplace injury was consistent with a crush injury, or whether his injury was a "boxer's fracture," consistent with striking the inmate in the head with his fist as the medical records suggest.

## II. ARGUMENT AND AUTHORITY

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). At the discovery phase of litigation "relevancy" is broadly construed and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D.Kan.2004) (citation omitted). A discovery request should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party. *Id*.

When the requested discovery appears relevant, the party opposing discovery has the burden of establishing the lack of relevance by demonstrating that the requested discovery does not come within the scope of relevance set forth in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D.Kan.2003) (citation omitted). A party resisting discovery on the ground that the requests are overly broad has the burden of supporting its objection, unless the request is overly broad on its face. *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 686 (D.Kan.2000).

"'Discovery relevance is minimal relevance,' which means it is possible and reasonably calculated that the request will lead to the discovery of admissible evidence." *Teichgraeber v. Memorial Union Corp. of Emporia State University*, 932 F.Supp. 1263, 1265 (D. Kan. 1996) (internal citation omitted). "Relevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D.Kan.1991). Stated another way, "discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Snowden By and Through Victor v. Connaught Lab.*, 137 F.R.D. 325, 341 (D.Kan.1991), appeal denied, 1991 WL 60514 (D.Kan. Mar. 29, 1991).

### A.   FACEBOOK.COM MATERIALS

The production of relevant information stored electronically is expressly contemplated by Rule 34 of the Federal Rules of Civil Procedure.  *See* Fed.R.Civ.P. 34(a)(1)(A) ("A party may serve on any other party a request. . . to produce . . . any designated documents or electronically stored information . . .") (emphasis added).  Further, information stored on facebook is not private, a defendant posting information on facebook has "already shared [the information] with at least one other person through private messages or a larger number of people through postings." *E.E.O.C. v. Simply Storage Management L.L.C.*, 270 F.R.D. 430, 437 (S.D. Ind. 2010). "Facebook is not used as a means by which account holders carry on monologues with themselves." *Id.*

Plaintiff has produced evidence that Defendant Chronister posted a note to his facebook account on the same date that he was investigated by the OSBI in connection with the assault on Bosh.  The substance of the note indicates that Chronister was "stressed out," and it is reasonable to infer that Chronsiter was "stressed out" because of the investigation, the prospect of facing criminal charges, and the fear that investigators would find his version of events so absurd when compared with the video that he would face additional criminal charges for lying to investigators.[2]   The note describing events related to the Bosh investigation support the inference that Chronister utilized his facebook account to post

---

[2] At 0:24 seconds into the video, Chronister is observed forcefully slamming Bosh's head into the front of the booking desk. [*See* Dkt. # 122, ¶ 7].  However, in his report, Chronister claims that he ". . . leaned Mr. Bosh onto the counter where he tried to spin away from me." [*See* Ex. 8]. Nothing in the video supports Chronister's version of events.

information about this case.

None of the exceptions in Rule 26(c)(2)(C) apply to Plaintiff's requests for production of records from Defendant Chronister's facebook account. As demonstrated above, Chronister used his facebook account to a post note saying that he was "stressed out" the day the OSBI interviewed him about the assault on Bosh. The note, its timing and content support the reasonable inference that Chronister has used his facebook account to disseminate information that has a relationship to the assault on Bosh or the subsequent investigation. Accordingly, Plaintiff should be permitted to explore whether Chronster has used his facebook account to post other information about Bosh that may not be visible to those casually browsing the Internet.

Plaintiff's request for communications on facebook.com is neither cumulative nor duplicative because Defendant Chronister has not produced any materials from facebook.com. There is no alternative source to produce this information other than Defendant Chronister's own cost-free facebook.com account. Second, Plaintiff does not have any opportunity to acquire this information from any other source because the information was not produced by Defendant Chronister. Third, Defendant Chronister suffers a minimal, if an existent, burden in providing Plaintiff access to his facebook.com account. *See Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, 1995 WL 625962, at *11 (D. Kan. Oct. 5, 1995) ("The general rule . . . is that discovery is not denied solely because the requested material is sensitive.")

For these reasons, Plaintiff respectfully requests an Order compelling Defendant Chronister to produce all notes, messages and other data or information that plausibly relates to the Plaintiff, the investigation, or the assault on Plaintiff. To ensure compliance with this Order, and because the Defendant may selectively produce some records while withholding others, Plaintiff respectfully requests the Court's order compel Chronister to produce any profiles, postings, or messages (including status updates, wall comments, causes joined, groups joined, activity streams, blog entries), pictures, and social media applications that reveal, refer, or relate to the Bosh incident the investigations, any other assault, or investigation regarding the use of excessive force, and any communications with other present or former employees at the CCDC that reveal, refer, or relate to events that could reasonably be expected to touch upon a use of force event at the CCDC.

### B.   DESCRIPTION OF USE OF FORCE INCIDENTS

Again, none of the exceptions in Rule 26(c)(2)(C) apply to Plaintiff's Interrogatory seeking information about use of force incidents involving either Chronister or Girdner. While Plaintiff would gladly accept copies of incident reports detailing use of force incidents, the Defendants disclaim the ability to provide records that belong to the CCGBA, and the CCGBA has refused to provide records without more specificity. [*See* Ex. 9, *CCGBA Responses to Plaintiff's Second Document Requests*, pp. 2-3, *Responses to Requests No. 14, 15*].

Even assuming the Defendants are willing to provide incident reports in lieu of responding, that does not alleviate their obligation to provide responsive information in the

first instance.  Indeed, the Defendants may be aware of use of force incidents that were not reduced to writing.  The business records exception to Rule 33 would not apply in this circumstance, and Defendants should be ordered to provide a written description of those incidents as requested.  Finally, the complaint that Defendants cannot comprehend the phrase "use of force incident" is not persuasive.  Defendants are obligated to answer the interrogatory using the phrase as they understand it.  *See Pulsecard, Inc. v. Discover Card Servs.*, Inc., 168 F.R.D. 295, 310 (D. Kan. 1996). (A party responding to discovery requests "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories.").

      Finally, the suggestion that the Interrogatory is overly broad is equally unpersuasive.  Defendants suggest that they cannot answer the Interrogatory because the phrase "use of force" includes everything from handcuffing events to mere officer presence.  Of course, "use of force" also includes the use of physical restraints, OC, or pepper, spray, use of restraint chairs, spit hoods, non-lethal weapons, defensive tactics, etc.  Indeed, one incident may include a panoply of instances where a jailer resorted to a variety of techniques that fit within the phrase "use of force."  However, the scope of the phrase itself cannot operate to defeat the Defendant's obligation to provide information that is relevant and responsive to the Interrogatory itself.   If a proper objection is made, the party still has the obligation to answer as much of the interrogatory as it can.  *See* 8A C. A. Wright, A. R. Miller, & R. L. Marcus Federal Practice & Procedure § 2173 (2d ed. 1994).

In this case, the Defendants simply refuse to give any answer at all, and for this reason, Plaintiff respectfully requests the Court grant the motion to compel.

## C.     LIMITED ACCESS TO MEDICAL RECORDS

Plaintiff has presented evidence that Defendant Girdner suffered a workplace injury on June 16, 2009. It is undisputed that an incident with an inmate directly led to Girdner's injury. Girdner prepared a report describing the injury as a crush injury. However, the inmate reported to medical personnel that he was assaulted by a jailer, and medical personnel documented injuries to the inmate that required several staples to close. One of the two men is lying, and it is reasonable to infer that objective diagnostic medical records and imaging related to Girdner's workplace injury may substantiate one version of the events.

If Girdner's medical records suggest that his injury is consistent with a boxer's fracture and not a crush injury, that information is relevant to showing that Girdner has falsified incident reports. Lying and the falsification of incident reports are directly relevant to the credibility of Girdner, who prepared an incident report here denying that he assaulted the Plaintiff. The information is also relevant to whether falsification of reports is tolerated or encouraged at the CCDC. Girdner, as the Assistant Jail Administrator, exercised supervisory authority over Defendant Chronister, and the Second Amended Complaint contains a specific allegation that Chronister falsified a report to justify his assault on the Plaintiff. [*See* Dkt. #122 p. 3, ¶ 17].

To be clear, Plaintiff is not seeking an unlimited waiver to pour over years of Girdner's medical records. On the contrary, Plaintiff only seeks those medical records

6:11-cv-00376-JHP   Document 128   Filed in ED/OK on 10/08/13   Page 12 of 13

related to a workplace injury sustained by Girdner where the inmate-patient reported that he was assaulted by a jailer at the CCDC, which coincided with Girdner's claim that he suffered a crush injury to his hand. The request is narrowly-tailored, it is relevant to the claim raised by the Plaintiff, the records are relevant to the credibility of Girdner, and they are relevant to the affirmative defenses he raised in response to Plaintiff's Second Amended Complaint, which asserted that all actions were taken in good faith. Girdner was not compelled to raise good faith as an affirmative defense, and by doing so, Girdner has necessarily placed his credibility at issue and waived his right to use a medical privilege as both a sword and a shield. *See* 12 O.S. § 2503D(3) (Physician-patient privilege is waived where "communication relevant to the physical, mental or emotional condition of the patient in any proceeding in which the patient relies upon that condition as an element of the patient's claim or defense . . ."). For these reasons, Plaintiff respectfully requests the Court grant the motion to compel.

**WHEREFORE,** all premises considered, Plaintiff respectfully requests the Court grant the motion to compel.

Respectfully submitted,

 s/J. Spencer Bryan
J. Spencer Bryan, OBA # 19419
Steven J. Terrill, OBA # 20869
Bryan & Terrill Law, PLLC
9 E. 4th St., Suite 600
Tulsa, OK 74103
Tele:   (918) 935-2777
Fax:   (918) 935-2778
jsbryan@bryanterrill.com
*Attorneys for Daniel Bosh*

12

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 8, 2013, I electronically transmitted the forgoing instrument to the Clerk of the Court using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Steven J. Terrill | Randall J. Wood |
| sjterrill@bryanterrill.com | rwood@piercecouch.com |
| | |
| D. Mitchell Garrett | Chris J. Collins |
| Mitchell@garrettlawcenter.com | cjc@czwglaw.com |
| | |
| Robert S. Lafferrandre | Stephen L. Geries |
| rlafferrandre@piercecouch.com | steve@czwglaw.com |

                                            *s/J. Spencer Bryan*
                                            J. Spencer Bryan