IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANIEL BOSH, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CHEROKEE COUNTY GOVERNMENTAL )<br>BUILDING AUTHORITY; )<br>)<br>GORDON CHRONISTER; and )<br>)<br>T.J. GIRDNER, )<br>    Defendants. ) | Case   No.:   11-cv-00376-JHP |

**RESPONSE OF DEFENDANTS GIRDNER AND CHRONISTER
TO PLAINTIFF'S MOTION TO COMPEL
RESPONSES FROM DEFENDANTS CHRONISTER AND GIRDNER**

**I.
RESPONSE TO PLAINTIFF'S MOTION TO COMPEL
WITH BRIEF IN SUPPORT**

**A.
REQUEST FOR DOCUMENT NO. 2 REQUIRING DEFENDANT CHRONISTER'S
FACEBOOK CONTENTS IS OVER BROAD, VAGUE, NOT RELEVANT, AND NOT
REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE**

At the outset, Defendants contend that the issue surrounding Plaintiff's Request For Document No. 2 is an argument over absolutely nothing. There is nothing further to produce that is responsive to Plaintiff's request, aside from that which has already been produced, and Defendants have advised Plaintiff of the same, evidenced by the following:

 **REQUEST FOR DOCUMENT NO. 2:** All diaries, notes, written reports, statements, tape recordings, investigation reports, etc., prepared by or on behalf of the Defendants which contain entries regarding the incident alleged in the Petition or the injuries claimed in this lawsuit.

 **RESPONSE NO. 2:** Except for the incident reports previously referenced, the Defendant has no documents responsive to this request in his possession. Defense counsel has possession of the videos that appear to be the same videos identified in the Plaintiff's Rule 26 Disclosure. [*See* Ex. 1, p. 2].

1

Nevertheless, Plaintiff claims that Defendant Chronister's Facebook post on May 31, 2011, wherein Chronister wrote "talk about a stressed out day come on six o'clock [sic]" is clear evidence of a "note" that contains entries regarding the incident alleged. Without any further evidence, and based solely on assumption, Plaintiff now insists this "note" surrounds the OSBI interviews of Cherokee Detention Center ("CCDC") employees who had knowledge about the incident alleged in Plaintiff's Petition that were being conducted the same day. Presuming this argument is even remotely close to being cloaked in any semblance of accuracy, and setting aside that Chronister may have been writing about any number of work or personal issues that caused him stress at the workplace, Plaintiff contends he is entitled **now** not only to Chronister's Facebook posts that directly relate to the allegations in his Petition, but to **any** posts, messages, profiles, causes joined, groups joined, activity streams, blog entries, pictures, wall comments, status updates, and tweets on **any** social media site that refer or relate not only to Plaintiff, but to any other assault, or investigation regarding excessive use of force, as well as any communications with other present or past employees of the CCDC that might reveal, refer or relate to events that could reasonably be expected to touch upon a use of force event at the CCDC.

Again, Chronister, by and through his counsel, has informed Plaintiff's counsel by way of written response that aside from the incident reports and tape recordings already in Plaintiff's possession, Chronister does not have any other "diaries, notes, written reports, statements, tape recordings, investigation reports, etc." that contain entries regarding the incident alleged in Plaintiff's Petition—including Facebook posts. [*See* Ex. 1, p. 2]. There is nothing in Chronister's Facebook posted by him or any of his "Facebook friends" that relates to the allegations set forth in Plaintiff's Petition. Plaintiff's counsel has been advised

the same by way of written response prepared by Chronister with assistance of counsel, who is an officer of the court, as well as by telephone conference with Chronister's counsel. More importantly, the "note" that Plaintiff's counsel contends is evidence that Chronister was "stressed out" because of the OSBI investigation **is already in Plaintiff's possession**.

Plaintiff now wants this Court to authorize a "blank check" to allow a fishing expedition into Chronister's Facebook Page. Rule 26(b)(1) permits as follows:

> *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence   All discovery is subject to the limitations imposed by Rule 26(B)(2)(C).

Fed. R. Civ. P. 26(b)(1).

In *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010), the Court noted that "Rule 26(b) will not permit unlimited discovery. Rule 26(b)(1) permits discovery only of "[r]elevant information' and the discovery must 'appear[ ] reasonably calculated to lead to the discovery of admissible evidence." Moreover, all discovery is limited by Rule 26(b)(2), which protects against, inter alia, overly burdensome discovery requests, discovery of cumulative materials, and overly costly discovery requests. *See* Fed.R.Civ.P. 26(b)(2)(C)(i)-(ii); cf. *Hall v. UNUM Life Ins. Co. of America*, 300 F.3d 1197, 1203 (explaining that even in de novo review "[c]umulative or repetitive evidence ... should not be admitted").

Even if the Court deems Chronister's Facebook Page as discoverable, there are special considerations that should be taken into account. Discovery of social media content

3

requires a novel application of basic discovery principles insofar as this type of discovery challenges the bounds of appropriately broad limits. "…[B]ut [there are] limits nevertheless," on the discoverability of social communications. *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 432 (S.D. Ind. 2010).

Pursuant to Federal Rule of Civil Procedure 34(a), a party may request documents "in the responding party's possession, custody, or control." Rule 34(b) requires the requesting party to describe the items to be produced with "reasonable particularity" and specify a reasonable time, place, and manner for the inspection. Fed. R. Civ. P. 34(b)(1)-(2). "The test for reasonable particularity is whether the request places a party upon 'reasonable notice of what is called for and what is not'." *Bruggeman ex rel. Bruggeman v. Blagojevich*, 219 F.R.D. 430, 436 (N.D. Ill. 2004) (citing Parsons v. Jefferson-Pilot Corp., 141 F.R.D. 408, 412 (M.D.N.C. 1992); *see also Regan–Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir. 2008) (*"Though what qualifies as 'reasonabl[y] particular' surely depends at least in part on the circumstances of each case, a discovery request should be sufficiently definite and limited in scope that it can be said 'to apprise a person of ordinary intelligence what documents are required and [to enable] the court … to ascertain whether the requested documents have been produced'."*)

"[E]ven though certain SNS content may be available for public view, the Federal Rules do not grant a requesting party 'a generalized right to rummage at will through information that [the responding party] has limited from public view' but instead require 'a threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence'." *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012).

In the instant case, Plaintiff fails to make the "threshold showing" that the request at issue is reasonably calculated to lead to the discovery of admissible evidence. The language of Plaintiff's request does not provide sufficient notice to Chronister of what should be considered responsive material. Moreover, Plaintiff's request contemplates the production of third-party communications, but fails to provide notice to Plaintiff of which specific third party communications are and are not called for by the request.

"All encompassing" production requests do not meet Rule 34(b)(1)(A)'s reasonably particularity requirement, *In re Asbestos Prods. Liab. Litig. (No. VI)*, 256 F.R.D. 151, 157 (E.D. Penn. 2009), and discovery rules do not allow a requesting party "to engage in the proverbial fishing expedition, in the hope that there might be something of relevance in [the producing party's] Facebook account." *Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 388 (E.D. Mich. 2012).

In this case, there is no evidence, and absolutely nothing to support Plaintiff's contention that Chronister's Facebook Page contains information related to this case. The May 31, 2011, post is not, was not, and does not relate in any way to this case, or the interviews being conducted at the CCDC on the same day. Plaintiff has wholly failed to make even a threshold showing that he should therefore be granted unfettered access to the entirety of Chronister's Facebook Page. More importantly, Plaintiff has failed to articulate with sufficient reasonable particularity the information sought from Chronister. Plaintiff's Motion in this regard should be overruled.

**B.**
**INTERROGATORY NO. 15 REQUESTING**
**PRIOR AND/OR SUBSEQUENT USE OF FORCE INCIDENT REPORTS IS**
**OVER BROAD, UNDULY BURDENSOME, VAGUE, NOT RELEVANT, AND NOT**
**REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE**

At issue in this portion of Plaintiff's Motion is Interrogatory No. 15, which seeks unbridled discovery of prior incidents of force involving Defendants Girdner and Chronister, and to which Defendants object, set forth as follows:

> **INTERROGATORY NO. 15:** For each use of force incident involving yourself at the Cherokee County Detention Center, please provide the following:
> A. The date and time of the incident;
> B. The name(s) of any involved arrestee, inmate or detainee (however designated);
> C. The name(s) of any involved CCDC employees or employees of the Cherokee County Governmental Building Authority;
> D. The name(s) of any involved law enforcement Personnel [sic];
> E. A detailed description of the circumstances;
> F. Whether you prepared any written report;
> G. The identification of each policy and/or procedure, by name and number, that governed your conduct during the use of force;
> H. Whether you are aware of any investigation into the use of force and, if so, a detailed description of what you know about that investigation, its scope and conclusion;
> I. The name(s) of each person investigating a use of force incident responsive to this request;
> J. Whether any inmate, arrestee or detainee received medical treatment following the use of force incident, and a description of such treatment;
> K. Whether you or any employee or law enforcement personnel received any medical treatment, and a description of such treatment and the basis for it.
>
> **ANSWER NO. 15:** The Defendants object to Interrogatory No. 15 as being overly broad and unduly burdensome. Interrogatory No. 15 is so vaguely worded that it is impossible for the Defendants to determine the scope of what is being requested. The phrase "use of force incident" could involve any application of physical contact to any inmate, which occurs on an almost daily basis in the course of interactions with persons detained at the Cherokee County Criminal Justice Center. Additionally, reports and records regarding every use of force incident would require the Defendants and other staff at the Cherokee County Criminal Justice Center to review numerous individual inmate files. This would require the Defendants and other staff to spend numerous hours researching records on "use of force incidents" that have no relation to the accusations made by the Plaintiff in this case. This request is an impermissible fishing expedition under the Federal Rules. Federal Courts have long recognized that the Federal Rules for Discovery "are not intended as a broad licensure to mount serial fishing expeditions." Aponte-Torres v. University of Puerto Rico, 445 F.3d 50, 59 (1st Cir. 2006). Where the requested discovery "goes beyond a mere fishing

expedition, [and instead is] designed to 'drain the pond and collect the fish from the bottom,'" such discovery should not be permitted. State ex rel Upjohn Company v. Dalton, 829 SW.2d 83, 85 (Mo. App. E.D. 1992) [quoting In re IBM Peripheral EDP Devises Antitrust Litigation, 77 FRD 39, 42 (N.D. Cal. 1977)]. [*See* Ex. 2, Pages 1-3].

Defendants Girdner and Chronister agree with Plaintiff that "discovery should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Snowden By and Through Victor v. Connaught Labs., Inc.*, 137 F.R.D. 325, 341 (D. Kan. 1991), *appeal denied*, 1991 WL 60514 (D. Kan.). Though the scope of discovery is broad, it is not unlimited. *Shaver v. Yacht Outward Bound*, 71 F.R.D. 561, 563 (N.D. Ill. 1976); *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 606 (D.D.C. 1969) (recognizing that although evidence sought may be relevant it is still possible for it to also be unreasonable or oppressive).

In the instant matter, Plaintiff seeks unlimited discovery of all prior incidents of force involving Defendants Girdner and Chronister, without time limit, without regard to the privacy concerns of those individuals listed therein who are not parties to this lawsuit, without regard to HIPAA violations that may very likely result in such disclosure, without clarity as to what constitutes a "use of force" and without difference as to whether or not the incidents came prior or subsequent to the Plaintiff's allegations of excessive force against him. Objections to scope and breadth aside, Plaintiff's discovery request amounts to a license to conduct a fishing expedition. *See*, *e.g.*, *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 59 (1st Cir. 2006) (recognizing that the Federal Rules for Discovery "are not intended as a broad licensure to mount serial fishing expeditions.").

Moreover, Plaintiff fails to provide any basis that the information he seeks is relevant to the use of excessive force claims brought in this action—presumably because

7

this information is not reasonably calculated to lead to the discovery of admissible evidence.

A very similar issue was addressed by the Court in *Miller v. Doctor's Gen. Hosp.*, 76 F.R.D. 136, 138 (W.D. Okla. 1977), when Plaintiff filed a Motion to Compel seeking information concerning complaints filed against Defendant Hospital with either the United States government or the State of Oklahoma. Plaintiff's complaint alleged that his discharge was the result of racial discrimination. *Id*. Plaintiff's Motion sought information regarding any complaints alleging racial discrimination against Defendant that have been filed with either a federal or state agency, the number of complaints that have been filed, the agency where each complaint was filed, and the identifying case number of each complaint, the names, addresses, and telephone numbers of the complainants involved in these previous complaints, any ruling by a federal or state agency finding a discriminatory employment practice by Defendant, the agency, complaint, and identifying number of those complaints in which a ruling of employment discrimination by Defendant has been rendered, whether there has ever been a settlement in which Defendant has paid a cash sum to a complainant to dismiss a complaint of employment discrimination, whether there have been other lawsuits filed against Defendant for alleged employment discrimination and the style of the lawsuit, case number, and court wherein any other lawsuit has been filed. *Id*. Defendant objected to providing this information on the basis that it sought "to elicit information that [was] irrelevant to the resolution of the issues presented by the instant case." *Id*.

Relying on *Hawes v. C. E. Cook & Co.*, 64 F.R.D. 22 (W.D. Mich. 1974), the Court reasoned that "the basic positive touchstone is relevance, including the reasonable possibility that the information sought would lead to admissible evidence." *Miller*, 76 F.R.D.

8

at 139. They found that Plaintiff failed to specify in his Motion to Compel how the information requested would be relevant to the issues involved in the lawsuit, and held that Defendant's objections to providing the information Plaintiff sought should be sustained. *Id*.

Plaintiff wholly fails to provide any legitimate basis for which prior instances of force employed by Girdner and Chronister in unrelated cases that do not in any way involve Plaintiff may reasonably be calculated to lead to the discovery of admissible evidence; however, the only basis Plaintiff could even remotely attempt to is under Rule 404(a)(3) or Rule 404(b)(2) of the Federal Rules of Evidence.

Rule 404(a)(3) of the Federal Rules of Evidence provides as follows: that "evidence of a witness's character may be admitted under Rules 607, 608, and 609." Rule 608 of the Federal Rules of Evidence provides that a "witness's character for truthfulness or untruthfulness may be attacked or supported by testimony of the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." Rule 608 provides further that specific instances of conduct may be admissible if they are probative for **truthfulness** or **untruthfulness**.

As such, Rule 404(a)(3) clearly prohibits Plaintiff from introducing incidents of past or subsequent uses of force by Girdner or Chronister as they are not sought to attack their reputation for having a truthful character, but rather to show that Girdner and Chronister have used excessive force against other inmates, and therefore, they must have used excessive force against Plaintiff, which is clearly prohibited under Rule 404(a)(1) of the Federal Rules of Evidence.

Likewise, Rule 404(b)(2) precludes the introduction of "other acts evidence" unless it is offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Relying on *United States v. Hogue,* 827 F.2d 660, 662 (10th Cir.1987) (discussing the inadmissibility of evidence of prior or subsequent bad acts to show action in conformity therewith), the Court in *Mata v. City of Farmington*, 798 F. Supp. 2d 1215, 1223-24 (D.N.M. 2011), held that "to admit other crimes, wrongs, or acts under rule 404(b), the proponent must provide a clear and logical connection between the alleged earlier offense or misconduct, and the case being tried."

Further, a party introducing 404(b) evidence must show the following: (1) the evidence is introduced for a proper purpose; (2) the evidence is relevant; (3) the evidence has probative value that is not substantially outweighed by the potential for unfair prejudice; and (4) the party introducing the evidence must precisely articulate the purpose for which the evidence is offered. *See United States v. Hardwell,* 80 F.3d 1471, 1488 (10th Cir.1996) (citing *Huddleston v. United States,* 485 U.S. 681, 691–92 (1988)).

The Tenth Circuit has found that evidence of prior use of force fails to satisfy the four-factor test required to introduce Rule 404(b) evidence. *See Chavez v. City of Albuquerque,* 402 F.3d 1039, 1046 (10th Cir.2005) (holding that the plaintiff failed to satisfy the first factor—that evidence of prior use of force was introduced for a proper purpose); *Tanberg v. Sholtis,* 401 F.3d 1151, 1167–68 (10th Cir.2005) (holding that plaintiffs failed to satisfy the second factor—that evidence of past use of force was relevant).

In *Chavez*, the Tenth Circuit examined the admissibility of prior decisions of defendant Andrew Lehocky, a K–9 officer, to use his police service dog in cases which were

10

unrelated to the plaintiff's claim. *See Chavez*, 402 F.3d at 1046. The Tenth Circuit affirmed the decision of the Honorable William P. Johnson, United States District Judge for the District of New Mexico, to exclude evidence of "other incidents in which arrestees claimed [the defendant] used excessive force in deploying [the police service dog] Bart." *Id*. The plaintiff in that case had argued that these other incidents demonstrated absence of mistake as well as modus operandi and contended that the district court should admit the prior incidents under Rule 404(b). *Id*. Concluding that the evidence was not offered for a proper purpose, and in upholding the district court's decision to exclude these prior incidents, the Tenth Circuit stated and explained:

> Although [the plaintiff] argues that inquiry into these other incidents should have been permitted to show absence of mistake or accident, or alternatively, that [the K–9 officer's] use of [police service dog] constituted a "modus operandi," none of these alternative bases for introducing 404(b)-type evidence was implicated on the facts presented. There was no claim or defense suggesting that [the K–9 officer] accidentally or mistakenly used the police dog. Indeed, it seems clear that he made a deliberate, conscious decision to do so. Moreover, proof of a "modus operandi" is only relevant when there is an issue regarding the defendant's identity.

*Id*. (citations omitted). The Tenth Circuit also noted that the district court concluded "that such evidence was not relevant under the objective reasonableness standard of *Graham v. Connor* [,490 U.S. 386 (1989).]" *Id.* at n. 4.

In this case, as in *Chavez*, Plaintiff seeks unbridled access to all use of force incidents, but fails to meet the threshold requirement of establishing the relevance of these reports under an objective standard.

Like the Tenth Circuit, a number of circuit courts agree that a police officer's use of force in a factually unrelated incident is improper character evidence under Rule 404(b). *See Treece v. Hochstetler,* 213 F.3d 360, 363–64 (7th Cir. 2000) (holding that, in a § 1983

suit alleging a police officer demanded a bribe in exchange for dropping charges against the plaintiff's husband, the officer's prior "bad acts" were insufficient to show modus operandi), *cert. denied,* 531 U.S. 957 (2000); *Gates v. Rivera,* 993 F.2d 697, 700 (9th Cir.1993) (holding that, in a § 1983 excessive force case, the district court erred in allowing the defendant police officer to testify that, in his sixteen-and-one-half years as a police officer, he never shot anyone); *Hopson v. Fredericksen,* 961 F.2d 1374, 1379 (8th Cir.1992) ("Showing a proclivity to engage in conduct is the same as showing a propensity to engage in conduct and both are prohibited by [Rule 404(b)]."); *Morgan v. City of Marmaduke,* 958 F.2d 207, 211 (8th Cir.1992) (noting that "issues of motive and intent are essentially irrelevant in an excessive force case as the test is an objective one"); *Berkovich v. Hicks,* 922 F.2d 1018, 1022 (2d Cir.1991) (stating that prior complaints against police offered to show an aggravated state of mind was improper character evidence); *Jones v. Hamelman,* 869 F.2d 1023, 1027 (7th Cir.1989) (holding that the district court properly excluded testimony of inmate regarding the callous indifference by prison official toward the protection of inmates because, among other reasons, it did not fit within a Rule 404(b) exception); *Hirst v. Gertzen,* 676 F.2d 1252, 1262 (9th Cir. 1982) (finding that a deputy's prior violent and brutal acts constituted inadmissible character evidence). *See also Eigeman v. City of Great Falls,* 723 F.Supp. 522, 525 (D. Mont. 1989) (finding that a new trial was not warranted on basis of newly discovered evidence that police officer was involved in a subsequent unrelated incident because such evidence "would serve to take the focus of the jury away from the question of what actually happened at the time of that confrontation, and direct it to the character of the defendant.... This is precisely what Fed. R. Evid. 404 is designed to prohibit."). Clearly, Plaintiff's Motion in this regard should be overruled.

## C.
## REQUEST FOR PRODUCTION NO. 23 REQUESTING A LIMITED MEDICAL AUTHORIZATION ENTITLING PLAINTIFFTO GIRDNER'S MEDICAL RECORDS ASSOCIATED WITH HIS JUNE 16, 2010,VISIT TO TAHLEQUAH CITY HOSPITAL IS NOT RELEVANT OR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

At issue is Plaintiff contention that he is entitled to a Limited Medical Authorization permitting him to obtain Girdner's medical records, to which Defendant Girdner objected, as follows:

> **REQUEST NO. 23:** Please provide an executed copy of the Release submitted herewith for the production of Defendant's medical records from Tahlequah City Hospital and W.W. Hastings for the date June 16, 2010.
>
> **RESPONSE MO. [sic] 23:** The Defendant objects to Request for Production of Documents No. 23 in that it seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of relevant and admissible evidence. The medical records of Defendant T.J. Girdner from Tahlequah City Hospital and W.W. Hastings for the date June 16, 2010 have no discernible relevance to the issues raised in this litigation. [*See* Ex. 3, Page 1].

To be clear, the medical records Plaintiff seeks are associated with a completely unrelated occurrence that happened nearly a month following the incident that gives rise to Plaintiff's allegations, and **does not** involve Plaintiff on the basis that the medical record Plaintiff has in his possession may be contradicted by other medical records that relate Girdner's injury as a "boxer's fracture" versus a "crush injury," as alleged by Girdner, and thereby proving that Girdner "is lying." This request has absolutely no bearing on the subject matter of this action and more importantly is not even remotely likely to lead to the discovery of admissible evidence. It is inadmissible under Rule 404(a)(3) of the Federal Rules of Evidence in that it contemplates the introduction of extrinsic evidence of specific instances of conduct that are not probative for truthfulness or untruthfulness.

Likewise, it is equally inadmissible under Rule 404(b)(2), which precludes the introduction of "other acts evidence" unless it is offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." "[T]o admit other crimes, wrongs, or acts under Rule 404(b), the proponent must provide a clear and logical connection between the alleged earlier offense or misconduct, and the case being tried." *Mata*, 798 F. Supp. 2d at 1223-24.  Plaintiff has wholly failed to do so in this case, and as such, Plaintiff's Motion to Compel in this regard should be overruled.

### D.
### CONCLUSION

Plaintiff's Motion to Compel should be denied as the request for Chronister's Facebook Page contents is over broad, vague, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence.  Likewise, Plaintiff's request for prior and/or subsequent use of force incident reports is over broad, unduly burdensome, vague, not relevant, and not reasonably calculated to lead to the discovery of admissible evidence.  Finally, Plaintiff's request to produce a Limited Medical Authorization entitling Plaintiff to Girdner's medical records associated with his June 16, 2010, visit to Tahlequah City Hospital is not relevant or reasonably calculated to lead to the discovery of admissible evidence.

**WHEREFORE**, premises considered, Plaintiff respectfully requests the Court deny Plaintiff's Motion to Compel.

Respectfully submitted,

s/ Randall J. Wood
------
Robert S. Lafferrandre (OBA No. 11897)
Randall J. Wood (OBA No. 10531)
PIERCE COUCH HENDRICKSON
  BAYSINGER & GREEN, L.L.P.
1109 N. Francis
Oklahoma City, Oklahoma  73106
Telephone:    (405) 235-1611
Facsimile:     (405) 235-2904
rlafferrandre@piercecouch.com
rwood@piercecouch.com
Attorneys for Defendants Gordon Chronister in his individual capacity and T. J. Girdner in his individual capacity

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day October, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| J. Spencer Bryan, | Stephen L. Geries, |
| jsbryan@bryanterrill.com | Steve@czwglaw.com |
| Steven J. Terrill, | COLLINS, ZORN & WAGNER, P.C. |
| sjterrill@bryanterrill.com | 429 NE 50th, Second Floor |
| Bryan & Terrill Law, PLLC | Oklahoma City, OK  73105 |
| 401 South Boston, Suite 2201 | *Attorneys for Cherokee County* |
| Tulsa, OK  74103 | *Governmental Building Authority* |

-and-

D. Mitchell Garrett,
mitchell@garrettlawcenter.com
GARRETT LAW CENTER
P.O. Box 1349
Tulsa, Oklahoma 74101-1349
*Attorneys for Plaintiff*

s/ Randall J. Wood
------
Randall J. Wood