IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) DANIEL BOSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-11-376-JHP |
| | ) | |
| (2) CHEROKEE COUNTY GOVERNMENTAL BUILDING AUTHORITY, et al. | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CHEROKEE COUNTY GOVERNMENTAL BUILDING AUTHORITY'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL INSPECTION**

Defendant Cherokee County Governmental Building Authority ("Defendant") submits this Response to Plaintiff's Motion to Compel Inspection [Dkt. 166]. For the following reasons, Defendant asks that Plaintiff's Motion to Compel Inspection be denied in full and that Defendant be awarded its attorney fees and costs associated with defending Plaintiff's duplicitous, unwarranted and meritless motion.

**INSPECTION**

On March 7, 2014, Defendant's counsel traveled to Tahlequah, Oklahoma for the inspection of the Cherokee County Detention Center ("CCDC") by agreement. Plaintiff filed his Motion to Compel Inspection [Dkt. 166] before the scheduled inspection took place in this matter. Defendant's counsel was already in Tahlequah and upon receiving the Motion to Compel Defendant's counsel contacted Plaintiff's counsel to cancel the scheduled inspection until the court ruled on Plaintiff's Motion. However, Plaintiff's counsel requested the scheduled inspection proceed, even if that meant counsel is forced to make two trips to the CCDC in Tahlequah for two separate inspections. Defendant's counsel objected to

Plaintiff's counsel taking two inspections and expressed that if the inspection proceeded Defendant would be objecting to the second inspection as harassing, duplicitous and unnecessary.

Regardless of Defendant's objection, on March 7, 2014 Plaintiff's counsel and a videographer were permitted to enter into the CCDC for purposes of an inspection. Plaintiff's counsel and videographer were allowed access to all areas wherein Plaintiff was incarcerated during the time referenced in his Complaint. Plaintiff's counsel was able to view and record by video all areas of the booking room, shower room, as well as the attached offices and cells to the booking area. Plaintiff's counsel was also able to view the video control system and photograph the video screens visible by the video system as they pertain to the booking area and the cameras therein. Plaintiff's counsel was also able to view, video and photograph the DVR equipment which was installed at the time of the incident alleged on May 17, 2011.

## ARGUMENT AND AUTHORITY

Rule 34 (a)(2) of the Federal Rules of Civil Procedure provides that a party may serve on any other party a request within the scope of Rule 26(b) "to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." However, this rule is not without limitations.

Rule 26(b)(1), Fed.R. Civ.P. defines the scope of discovery stating, "Parties may obtain discovery regarding any non privileged matter that is relevant to any party's claim or defense..." Additionally, a request for inspection must "describe with reasonable

particularity each item or category of items to be inspected" and "specify a reasonable time, place, and manner for the inspection and for performing the related acts."  Fed.R.Civ.P. 34(b)(1)(A) and (B).  If the parties differ as to whether an inspection is appropriate, the court must balance the respective interests by weighing "the degree to which the proposed inspection will aid in the search for truth" against the "burdens and dangers created by the inspection."  *Morris v. Cabelas*, 2011 WL 2516904, at *1 (D. Kan. June 23, 2011)[1](citing *Welzel v. Bernstein*, 233 F.R.D. 185, 186 (D.D.C. 2005) (internal quatations omitted).  Whether to permit an inspection pursuant to Rule 34 is within a court's discretion. *Id.*  Rule 34 permits the "observation of machinery, work practices, or manufacturing operations on a party's premises."  *McDonald v. Kellogg Co.*, 2011 WL 484191, at *2 (D.Kan. Feb. 7, 2011)[2] (quoting Jay E. Grenig and Jeffrey S. Kinsler, Handbook of Federal Civil Discovery and Disclosure, § 9 .22 (2d ed.)).

But this right of entry under Rule 34 to inspect and test has limits. *Id.*  The court has discretion to limit discovery if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information ...; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit."  Fed.R.Civ.P. 26(b)(2)(C).  Where the burdens and dangers that would accompany a proposed study outweigh the degree to

---

[1] Exhibit "1," unpublished case of *Morris v. Cabelas*, 2011 WL 2516904 (D. Kan. June 23, 2011).

[2] Exhibit "2," unpublished case of *McDonald v. Kellogg Co.*, 2011 WL 484191 (D.Kan. Feb. 7, 2011)

3

which the proposed study will aid in the search for the truth, the study should not be permitted. *McDonald*, 2011 WL 484191, at *2.

### **PLAINTIFF DID NOT SERVE A FORMAL RULE 34 REQUEST ON DEFENDANT**

Rule 34 (a)(2)of the Federal Rules of Civil Procedure provides that a party may <u>serve</u> on any other party a request within the scope of Rule 26(b)...  A request for inspection must "describe with reasonable particularity each item or category of items to be inspected" and "specify a reasonable time, place and manner for the inspection and for performing the related acts." Fed.R.Civ.P. 34(b)(1)(A) and (B).  In this matter, Plaintiff has not served a proper request upon the Defendant such that Plaintiff may enforce via a Motion to Compel.  Furthermore, Plaintiff has not provided any documentation indicating wherein he described with reasonable particularity each item or category of items to be inspected."

Regardless of Plaintiff's failure to serve a formal Rule 34 Request on Defendant, counsel for the parties had numerous discussions regarding the inspection.  Plaintiff first requested a general inspection of the CCDC following a deposition on February 14, 2014.  Subsequently, the parties exchanged several emails discussing the nature and scope of the inspection. (Exhibit "3," email exchange between counsel).  In Exhibit "3," Defendant's counsel sent Plaintiff an email (delineated by black font) to which Plaintiff's counsel responded (delineated in red font) and Defendant's counsel responded (delineated in blue font).  This was done to simplify the response due to the length of the original email.

In this email, the following exchange occurred:

With regard to the inspection, Defendant will agree to the inspection of the booking area, cells therein, and shower room. However, I am not aware of the relevance of an inspection of the sally port, offices in the booking area, trustee

pod, the tower, "server room," "medical unit," operation of security video system, telephone system, administrative offices of admin and assist admin.

--Answers to some of your questions are provided below. We intend to inspect the locations where Plaintiff was at in the facility. We also intend to inspect areas where incident reports suggest that use of force events occurred, and the tower is presumably the most logical and efficient use of time to observe the different pods from one location. We also intend to inspect the hallway to the trustee pod-- the vantage point from where Berryhill said he observed use of force events. We can skip the trustee pod itself.

[Steve Geries] Defendant objects to inspections of any areas where an unidentified incident report suggests that a use of force event occurred without further description of its relativeness to this matter. The tower is not related to the claims herein and is only in the direct line-of-sight with the pods. The pods are also not related to this matter since none of the events occurred in them related to Bosh's claims. Therefore, Defendant objects to the inspection of the tower, hallway, sally port or pods. If you will identify specific areas you wish to view and the rationale for the request, those locations will be considered. However, I can think of nothing in the pods remotely related to this matter. The hallway to the trustee pod is very lengthy and is not relative to this matter. Furthermore, I do not believe Mr. Berryhill testified to witnessing any specific use of force event.

I am also further confused what you mean by an inspection of the operation of security video system. Is it your intent to tinker or otherwise attempt to operate the system? Defendant will not provide an employee to answer questions regarding the operation of the system during any inspection and objects to any attempt by Plaintiff to operate the system.

--If there is a pan camera in the booking area, Plaintiff will inspect the visual field and limitations of that equipment. If a camera can zoom, Plaintiff will inspect its functionality. Otherwise, I have no inclination to "tinker" with the system. This shouldn't last more than a few seconds.

[Steve Geries] Defendant objects to any manipulation or use of the system. An inspection of the equipment is not the best manner to gain the information.

On February 25, 2014, Plaintiff's counsel sent a letter to Defendant's counsel regarding, in part, the inspection of the CCDC. In this letter, Plaintiff's counsel based his need to inspect the CCDC video surveillance system based upon "recent testimony

confirming the existence of multiple security cameras in the booking area on May 17, 2011, and the lack of evidence that any camera locations have been moved or removed since that time." (Exhibit "4," letter from Spencer Bryan dated February 25, 2014, ¶ III). In this letter, Plaintiff's counsel also noted that Defendant's counsel has agreed to look for the prior digital video recorder for the CCDC and Plaintiff requested an opportunity to inspect that recorder.

The parties agreed the inspection in this matter would take place on March 7th, 2014 at 3pm. In an effort to memorialize the scope of the inspection before it occurred, on March 5, 2014, Defendant's Counsel sent Plaintiff's counsel an email regarding the scope of the inspection and the agreement. (Exhibit "5," email to Plaintiff's counsel). This email expresses that Plaintiff will be able to inspect the "DVR box" from the security system although it is not connected to the current system or to a monitor.

**A. Functionality of the Booking Camera**

Plaintiff is claiming that the functionality of the camera in the booking area is highly relevant. However, Plaintiff unwittingly demonstrates his awareness and knowledge of the functionality of the "Booking Camera" in his Motion to Compel Inspection [Dkt. 66]. Plaintiff's motion acknowledges Plaintiff is aware of the location of the camera and its ability to pan and zoom throughout the booking area. [Dkt. 66, p. 2]. Plaintiff's motion also recites and affixes testimony of deponents regarding where the camera is typically pointed and how the camera is used. At no point in his motion does Plaintiff indicate why his counsel needs the opportunity to tinker with, manipulate or adjust the camera in question. It appears from Plaintiff's motion that he is already in possession of sufficient information regarding the camera in order to determine its capacity and functionality. Plaintiff's request

to play with the camera is irrelevant, duplicitous and the motion in this regard is frivolous; this is particularly true since Plaintiff is able to adequately articulate the functionality of the camera in question. In fact, Plaintiff has not yet deposed the individual defendants or the jail administrator with regard to this matter. If there are additional unidentified questions regarding the functionality of the "Booking Camera," Plaintiff has ample opportunity to explore those issues without operating the equipment.

Furthermore, during the inspection of the CCDC, Plaintiff's counsel viewed and recorded the monitor for each camera in the booking area and additionally videoed the equipment used to operate the cameras and monitors. Plaintiff is requesting this Court compel his ability to determine something which he has already determined. In this regard Defendant requests its attorney fees and costs associated with responding to this motion.

### B. Inspection of the Housing Pods

Plaintiff acknowledges in his motion that the use of force in this case occurred in the booking area and adjacent rooms, but has requested an inspection of the housing pods "to provide context" to unrelated "use of force" events occurred. Plaintiff has claimed that an examination of the housing pods is necessary to understand the physical arrangement of the pods and "provide context for the incident reports which describe jail staff escalating incidents with inmates who attempted to disengage staff by returning to their cells, or who posed no threat to anyone." However, Plaintiff's request to inspect this unrelated area of the CCDC is irrelevant and most likely subterfuge to gain discovery for unrelated matters.

Plaintiff wholly fails to offer any support for his claim how a physical inspection of the cell wherein a totally unrelated incident occurred involving an inmate who was in his cell and not being disruptive and then was later in a "use of force" event leads to any relevant

or admissible evidence in this case. Plaintiff's failure to understand the locking or closing of an unrelated cell door is of no consequence to this cause of action.

As an attempt to compromise, Defendant's counsel wrote to Plaintiff's counsel and indicated "If you will identify specific areas you wish to view and the rationale for the request, those locations will be considered. However, I can think of nothing in the pods remotely relative to this matter." Exhibit 3, p. 3. At no time has Plaintiff provided a relevant, specific event which lends any credibility to his alleged need to view the pods.

Plaintiff furthermore claims, in an effort to minimize the disruption to facility operations, he has offered to inspect the pods from the tower which has visual access from one location. Plaintiff certainly cannot articulate the need to enter into the tower, and furthermore fails to establish any relevance to a second inspection of the jail which would include an area in which Plaintiff was not incarcerated.

### C. Digital Video Recorder

Plaintiff has indeed requested an opportunity to inspect the DVR in use at the time of Plaintiff's incarceration, but it has been expressed to Plaintiff's counsel on numerous occasions that the DVR in question had been replaced and was no longer in operation. In the previous request to inspect the video recorder it appeared that Plaintiff's counsel wanted to view the old system. See Exhibits 3 and 4. Since Plaintiff's counsel was aware that the video system was no longer in use, it was clear that Plaintiff's counsel wanted to view the electronics to see what information could be gained from the labels, model, etc. To the best of the undersigned's memory and knowledge, the first occasion where Plaintiff's counsel requested an opportunity to actually connect the DVR to a power source, monitor, keyboard, mouse, or any other peripheral and then explore the contents of the DVR was

on the day before the inspection, March 6th, 2014 during the Rule 37 meeting.

Defendant did not agree to provide Plaintiff's counsel the opportunity to plug in the DVR for any reason.  Plaintiff's counsel did not express the ability or expertise associated with such a request and Defendant did not receive Plaintiff's request to operate the machine or review its contents until the night before the inspection was to be had. Defendant did not object to Plaintiff's request until Plaintiff specified the expanded scope of his request,.  Plaintiff has claimed he has been denied the opportunity to plug in the DVR to obtain its history, settings, metadata and any residual video recordings.  However, Plaintiff's claim makes several assumptions..

First, Plaintiff's counsel assumes he has the expertise necessary to connect the system in question, that there is not additional equipment necessary or that it is functional outside of the rack where it was formally maintained.  Second, Plaintiff's counsel assumes that Defendant (or Plaintiff's counsel) has spare equipment compatible with this old equipment that would adequately provide Plaintiff's counsel the ability to access the information.  Third, Plaintiff's counsel assumes that the history, settings, metadata and any residual video recordings are still on the system and were not erased when changed by the installer; this is a particular concern since the DVR has not been specifically maintained since August 8, 2012. Finally, Plaintiff assumes the information on the system is relevant. Simply, Plaintiff's request to connect and expect this equipment is tantamount to a fishing expedition.

According to documents received from Plaintiff's counsel, the old DVR system was replaced on August 8, 2012.  The old DVR system was on a five day loop which means that the video recorded over itself every five days.  Accordingly, between the time of Plaintiff's

claim on May 17, 2011 and its replacement on August 8, 2012, approximately 449 days passed. Therefore, it is safe to assume the information from Plaintiff's claim may have been recorded over up to 90 times. Plaintiff has offered no indication, information or claim that the information from DVR is obtainable or present. As such, Plaintiff wants to "grope around in the dark" to see if there may be something on the system. Such an invasion is unwarranted at this late date.

Plaintiff's counsel has been in contact with the installer of the system and has even provided information to the Defendant regarding the system. Plaintiff's communications with the seller and installer of this equipment will surely confirm that the DVR recorded over video every five days due to the limitations of the system. There is no reason why Plaintiff's counsel believes he is better able to determine or verify this information.

Finally, Plaintiff's request to inspect the contents of the old DVR system came the day before the inspection was scheduled. Plaintiff is simply out of time to perform such an intensive search. Inasmuch as Plaintiff's request may also require an expert to evaluate or access the information on the system, the deadline to disclose expert testimony expired on February 6, 2014 and the discovery deadline in this case expired on March 7, 2014. Plaintiff has not identified a third-party to view the DVR or its contents.

Plaintiff has been aware of the existence of the DVR system and video since the inception of this case. As such, Plaintiff has had ample opportunity to obtain the information on the DVR rather than waiting until the day before the discovery deadline to request it. Plaintiff's request is untimely and should be denied.

WHEREFORE, premises considered, Defendant Cherokee County Governmental Building Authority submits this Response to Plaintiff's Motion to Compel Inspection and

requests the Court deny Plaintiff's Motion to Compel Inspection as duplicative, cumulative, and irrelevant. Defendant further requests its attorney fees and costs associated with its response to Plaintiff's Motion.

    Respectfully submitted,

    s/ Stephen L. Geries
    Stephen L. Geries, OBA No. 19101
    COLLINS, ZORN & WAGNER, P.C.
    429 N.E. 50th Street, Second Floor
    Oklahoma City, OK  73105-1815
    Telephone:   (405) 524-2070
    Facsimile:   (405) 524-2078
    E-mail:   Steve@czwglaw.com
        czwg@czwglaw.com

    Attorney for Defendant Cherokee County Governmental Building Authority

## CERTIFICATE OF MAILING

    I hereby certify that on March 11, 2014, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants: J. Spencer Bryan, Steven J. Terrill, Mitchell Garrett, Robert S. Lafferrandre, and Randall J. Wood.

    s/ Stephen L. Geries
    Stephen L. Geries